

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

November 27, 2017

**BY ECF AND HAND DELIVERY**
Honorable P. Kevin Castel
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York  10007

Re:   *United States* v. *Kirk James*, S1 17 Cr. 244 (PKC)

Dear Judge Castel:

The defendant, Kirk James, is scheduled to be sentenced on December 4, 2017, for his offenses in this case:  namely, using the Internet to engage in sex trafficking, including the sex trafficking of minors and by force, fraud, or coercion, from in or about January 2014 to in or about December 2014, in violation of Title 18, United States Code, Sections 1952(a)(3) and 2. (ECF Doc. No. 10; PSR ¶¶ 1-3).[1]  The Government respectfully submits this letter in advance of sentencing and in response to the defendant's sentencing submission filed on October 6, 2017. (ECF Doc. No. 17 ("Def. Ltr.")).  The parties and the Probation Department agree that, under the United States Sentencing Guidelines (the "Guidelines" or "U.S.S.G."), the Guidelines range applicable to the defendant's conduct is 84 to 105 months' imprisonment (the "Stipulated Guidelines Range").  The Probation Department recommends a sentence within the Stipulated Guidelines Range.

---

[1]   The Presentence Investigation Report of the United States Probation Department (the "Probation Department"), for this case, dated August 15, 2017, is referenced herein as "PSR."  The Probation Department's Presentence Investigation Report for Case No. 10 Cr. 569 (KTD), the defendant's prior criminal case in this District, dated April 5, 2011, is referenced herein as "2011 PSR."  Counsel for the defendant, Avraham Moskowitz, Esq., represented the defendant in connection with his violations of supervised release in Case No. 10 Cr. 569 (KTD) (LGS), before the Honorable Lorna G. Schofield, and was provided a copy of the 2011 PSR during the course of those proceedings earlier this year. (*See United States* v. *James*, No. 10 Cr. 569 (KTD) (LGS), ECF Doc. No. 23 (reflecting the defendant's initial appearance in this District on his violations of supervised release)).

For the reasons that follow, the Government submits that the defendant poses a risk of recidivism and a danger to the community. As set forth in greater detail below, the Government respectfully submits that a sentence within the Stipulated Guidelines Range is warranted and necessary in this case because of, among other things: (1) the defendant's longstanding history of criminal conduct, which includes convictions for narcotics trafficking, assault with the intent to cause physical injury with a weapon, and the possession of hollowpoint ammunition; (2) the defendant's history of violence, which includes an assault and his membership in the "Crips" gang, a violent street gang; (3) the defendant's violations of the terms of his supervised release in the Southern District of New York and his fugitive status for approximately 18 months until he was arrested in Georgia in or about January 2017; (4) the defendant's commission of the instant offense while on supervised release; (5) the defendant's role as an organizer, leader, manager, or supervisor in the offense conduct; and (6) the seriousness of the offense conduct, which included physical violence and harmed both the public and several individual victims, including minor victims (the "Victims").

## BACKGROUND

A.  **The Defendant's 2009 Case**

On or about December 29, 2009, the defendant was arrested upon violently assaulting a woman in the vicinity of 239 West 145th Street in Harlem, New York. (PSR ¶¶ 82-86). During the course of this assault, the defendant repeatedly punched the victim, causing her to fall to the ground and appear to lose consciousness, and he then returned to stomp on the victim's head with his foot. (PSR ¶ 88). When Officers of the New York City Police Department (the "NYPD") searched the defendant in connection with his arrest, they found three bullets in his pants pocket. (PSR ¶¶ 82-86).

On or about January 12, 2010, the defendant was charged by Complaint in the Southern District of New York (the "2009 Case"). (*See United States* v. *James*, No. 10 Cr. 569 (KTD) (LGS), ECF Doc. No. 1). On or about June 24, 2010, the defendant waived indictment and entered a plea of not guilty to a one-count Information, No. 10 Cr. 569 (KTD), charging him with possessing three hollowpoint bullets after having previously been convicted of a felony, in violation of Title 18, United States Code, Section 922(g)(1). (*See United States* v. *James*, No. 10 Cr. 569 (KTD) (LGS), ECF Doc. Nos. 12, 13, 17).

[redacted]

On or about January 6, 2011, approximately one year after he was federally charged by Complaint, the defendant pleaded guilty to Information No. 10 Cr. 569 (KTD). (*See United States* v. *James*, No. 10 Cr. 569 (KTD) (LGS), ECF Doc. Nos. 13, 17). A *Pimentel* Letter, dated December 2, 2010, was provided by the Government to the defendant. (2011 PSR ¶ 2).

According to the 2011 PSR, in connection with the defendant's 2009 Case, the Probation Department calculated an applicable Guidelines range of 30 to 37 months' imprisonment, which was based on an offense level of 17 and a Criminal History Category of III. (2011 PSR ¶ 17). In the 2011 PSR, the Probation Department recognized "a natural inclination to want to give James an opportunity to rehabilitate himself and hope that he turns his life around." (2011 PSR at 18). The Probation Department, however, concluded that it was "difficult to show leniency towards the defendant" because of his recent conduct, which "exemplified an individual who lacked accountability and who was essentially out of control." (2011 PSR at 18). The Probation Department concluded that the defendant posed a "moderate-to-high risk of recidivism" and that his "actions have clearly demonstrated a disregard for the criminal justice system." (2011 PSR at 18). Noting that the defendant's "criminal history cannot be ignored or diminished," the Probation Department highlighted that the defendant had been arrested on six separate occasions within the three years prior to sentencing, that two of those arrests occurred while the defendant was waiting to be sentenced in connection with an earlier arrest, and that one of those arrests occurred while the defendant was on probation. (2011 PSR at 18). The Probation Department also emphasized that the defendant "has shown a history of violence, particularly towards women" that was especially troubling. (2011 PSR at 18 (referencing the defendant's beating and stomping on the head of a victim in or about December 2009)). Accordingly, the Probation Department recommended a sentence within the applicable Guidelines range to "address the sentencing objectives of punishment, incapacitation, and protection of the community." (2011 PSR at 18).

On or about April 12, 2011, despite the recommendation of the Probation Department, the defendant received a below-Guidelines sentence of 20 months' imprisonment and three years' supervised release. (PSR ¶ 82).

### B. The Defendant's Violations of Supervised Release

In connection with the 2009 Case, on or about June 12, 2012, the defendant was released from the custody of the Federal Bureau of Prisons and commenced his term of supervised release. (PSR ¶ 86). The defendant then violated the terms of his supervised release at the end of May 2015, by failing to remain in an inpatient treatment facility as ordered by the Court, and an arrest warrant was issued by the Court. (PSR ¶ 86). Prior to the violation, the Probation Department had already told the defendant that an arrest warrant would be issued if he did not comply with the terms of his supervised release. Following the violation, the Probation Department took steps to make the defendant aware of the arrest warrant, including notification of the defendant's mother.

From in or about June 2015 to in or about December 2016, the defendant remained a fugitive for violating the terms of his supervised release in connection with the 2009 Case. (PSR ¶ 20). During this time, the defendant acknowledged, through social media posts, both his fugitive status and his offense conduct (namely, the sex trafficking of women). For example, in or about July 2016, the defendant posted the following on Facebook:

> I'm going back to NYC to turn myself in so I can move on with my life and do some real pimpin. #CROSSCOUNTRY SHIT.

(PSR ¶ 20; Ex. A).  In or about January 2017, the defendant was arrested in Georgia in connection with a new drug-related offense and transported to this District.  (*See United States* v. *James*, No. 10 Cr. 569 (KTD) (LGS), ECF Doc. No. 29).

      C.      **The Offense Conduct**

In or about 2014—while on supervised release in connection with the 2009 Case—the defendant used the Internet to engage in the sex trafficking of minors and by force, fraud, or coercion.

The defendant posted dozens of advertisements of at least five women or girls (the "Victims") on classified websites including Backpage.com ("Backpage").  (PSR ¶¶ 14, 21).  These advertisements consisted of provocative and sexual photographs of the Victims, typically taken by the defendant (PSR ¶ 16), including photographs of the Victims dressed in lingerie (PSR ¶ 14).  The subject line of the advertisements typically contained a dollar amount—for example, $80—the victim's alleged age, and a nickname for the victim.  (PSR ¶ 14).  These advertisements included language indicating that the advertisements were for commercial sex and not merely for escort services.  For example, one advertisement read:  "I'm here to make it juicy baby . . satisfy your wildest cravings.  Better than your wife and your mistress.  100%big booty no fake bait and switch[.]  Come see me now so I can show off my talents."  (PSR ¶ 15).  Another advertisement read:  "Hey wats up fellaz[.]  Come experience some Wild kinky things."  (PSR ¶ 15).

When individuals (the "Customers") would contact phone numbers or email addresses associated with the advertisements, the defendant would arrange for the Customers to meet the Victims at locations in New York and other states, including hotels in the Bronx, New York.  (PSR ¶ 16).  The defendant set a pricing schedule for what it would cost for the Customers to engage in certain sex acts with the Victims.  (PSR ¶ 16).  Some of the Victims saw the defendant beat other Victims or were themselves beaten by the defendant.  (PSR ¶ 16).

The defendant repeatedly touted his criminal conduct online—again, all while on federal supervised release.  He bragged about his trafficking of the Victims on social media, including on Facebook and Instagram.  (PSR ¶ 18.)  For example, in 2015, the defendant posted a video on Facebook of himself in a luxury car telling Facebook users to "choose up."  Based on law enforcement training and experience, among other things, "choos[ing] up" is when a woman or girl working in prostitution or a trafficking victim "chooses" or switches from one pimp or trafficker to another.  (PSR ¶ 18).  This "choice" may be made voluntarily or through force, fraud, or coercion.  (PSR ¶ 18).

In 2014, the defendant posted on Facebook about telling "dat bitch" to "hop[] out my car an walk da blouvarddd . . . i need my money prontoo," followed by a photograph of three scantily-clad women or girls standing on the side of a road.  (PSR ¶ 19; Exs. B & C).  The defendant subsequently posted a photograph of the cash proceeds of his conduct. (Ex. D).  Additionally, on both Facebook and on Instagram, through a photograph of a vehicle bearing the license plate "RPGO" and the defndant's Instagram username or "handle" of "yungharlem.nyc_rpgo," the defendant flaunted his sex trafficking activity.  (PSR ¶ 19; Ex. E).  "RPGO," based on law

enforcement training and experience and as defined in the comments to the defendant's Facebook post, means "Real Pimpin' Goin' On."  (PSR ¶ 19; Ex. E).

### D. Procedural History

On or about April 19, 2017, the defendant was charged by Indictment with one count of sex trafficking by force, fraud, or coercion, in violation of Title 18, United States Code, Section 1519(a)(1) and (a)(2), and one count of use of interstate commerce to promote unlawful activity, in violation of Title 18, United States Code, Section 1952(a)(3). (ECF Doc. No. 1.)

On or about June 21, 2017, the defendant pleaded guilty, pursuant to a plea agreement with the Government, to a two-count Superseding Information, which charged two counts of the use of interstate commerce to promote unlawful activity, to wit, using the Internet to engage in sex trafficking, in violation of Title 18, United States Code, Section 1952(a)(3). (ECF Doc. No. 10; PSR ¶¶ 1-3).

Pursuant to the parties' plea agreement, the parties stipulated to an offense level of 23 and a Criminal History Category of V, resulting in a Stipulated Guidelines Range of 84 to 105 months' imprisonment. (PSR at 26).

The Probation Department agrees with the parties' calculation of the applicable Guidelines Range. (PSR at 26). The Probation Department recommends a sentence within the Stipulated Guidelines Range of 84 months' imprisonment, in part because of: the defendant's criminal history, which includes now seven known convictions; the defendant committed the instant offense while on supervised release; the seriousness of the offense, which included minor victims; and to provide just punishment and general and specific deterrence. (PSR at 26-27).

## DISCUSSION

The defendant's criminal conduct warrants a sentence of imprisonment within the parties' Stipulated Guidelines Range. The 18 U.S.C. § 3553(a) factors applicable here include the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, to afford adequate deterrence to this defendant and to other similarly situated individuals, and to protect the public from future harms and crimes committed by the defendant. *See* 18 U.S.C. § 3553(a)(2)(A)-(C). Each of these considerations weighs heavily in favor of a sentence within the Stipulated Guidelines Range.

*First*, the defendant's criminal history, his violations of the terms of his federal supervised release, and his offense conduct highlight the defendant's continued disregard for the law. A Guidelines sentence is thus necessary to deter the defendant from committing future crimes and to protect the public from the defendant.

The defendant's criminal history includes felony convictions for: Assault in the Third Degree (With Intent to Cause Physical Injury) (2009), Criminal Possession of a Controlled Substance in the Third Degree (Narcotic Drug With Intent to Sell) (2011), Possessing Hollowpoint Ammunition After Having Previously Been Convicted of a Felony (2011). (PSR ¶¶ 77-86). For

these convictions, the defendant was sentenced to probation, one year of imprisonment, and 20 months' imprisonment, respectively. (PSR ¶¶ 77-86).

It is worth noting that, in connection with the 2009 Case, the defendant was sentenced to a below-Guidelines sentence of 20 months' imprisonment—despite the Probation Department's recommendation of a Guidelines sentence of 30 months' imprisonment and despite the defendant's "moderate-to-high risk of recidivism," significant criminal history, history of violence, recent violent conduct, violation of the terms of his probation, and danger posed to the community. (2011 PSR at 18). Moreover, none of defendant's incarceratory terms appears to have deterred the defendant from continuing to engage in criminal conduct. Indeed, the defendant committed the instant offenses in or about 2014, while on federal supervised release in this District. In addition, the defendant not only absconded as a fugitive for approximately 18 months in or about 2015 to 2016, while on supervised release, but he also brazenly posted on social media about his fugitive status and his criminal conduct, highlighting his utter disregard for the law. (*See* PSR ¶¶ 18, 20; Exs. A-E).

*Second*, the defendant's history of violence, criminal history, and continued criminal conduct establish that the defendant poses a continued danger to the community. In or about 2011, the Probation Department concluded that the defendant's "history of violence," particularly violence against women, was evidenced by his criminal history, including his violent assault of a woman in or about December 2009. (2011 PSR at 18). Less than three years later, the defendant again committed acts of violence against women and girls by engaging in sex trafficking, including the sex trafficking of minors and by force, fraud and coercion. In committing these crimes, the defendant beat his Victims, forcing them to engage in commercial sex acts for his profit.

The defendant—in admitting that he was a member of the "Crips" gang, one of the largest and most violent gangs in the United States—claims that the Crips "introduced [the defendant] to the misogynistic attitude that is prevalent in gang culture." (Def's Ltr. at 2). The defendant now claims that he has learned his lesson. (*See* Def's Ltr. at 2). The defendant's long and disturbing record over the last decade, however, proves otherwise. The defendant offense conduct and criminal record thus establish that he poses a risk of recidivism and a danger to the community.

*Third*, a Guidelines sentence is necessary here to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment. *See* 18 U.S.C. § 3553(a)(2)(A)-(B). The defendant used interstate facilities to engage in the sex trafficking of at least five victims, including minors and by force, fraud, or coercion. In other words, the defendant promoted and managed a prostitution business where he exploited and profited off of the bodies of young women, including minor girls. The defendant used physical violence to commit his crimes. The defendant—again, while on supervised release—repeatedly touted his criminal conduct and his exploitation of women through online social media posts. (*See* PSR ¶¶ 18, 20; Exs. A-E). The defendant's criminal conduct is serious and has caused significant harm to his Victims and to the community. For this reason alone, a Guidelines sentence is warranted.

## **CONCLUSION**

For the foregoing reasons, the Government submits that a sentence within the Stipulated Guidelines Range of 84 to 105 months' imprisonment is warranted and necessary.

Dated: New York, New York
November 27, 2017

Respectfully submitted,

JOON H. KIM
Acting United States Attorney

By: /s/ Jane Kim
Jane Kim
Amanda Kramer
Robert Sobelman
Assistant United States Attorneys
(212) 637-2038 / 2478 / 2616